## DUFOUR et al. v. LANG.

### (Circuit Court of Appeals, Fifth Circuit. December 19, 1892.)

### No. 64.

1. APPEAL—FINAL DECREE.
   A decree, rendered at the suit of a stockholder, removing the liquidators of a corporation because they had interests adverse thereto, and appointing receivers having the powers and duties of liquidators in addition to the usual functions of receivers, is not a final decree as to the displaced liquidators from which they can appeal either in their official or individual capacities.

2. SAME—ASSIGNMENTS OF ERROR—FAILURE TO FILE APPEALS IN EQUITY.
   The eleventh rule of the circuit court of appeals for the fifth circuit, requiring an assignment of errors in the court below, which shall form part of the transcript on appeal, is applicable to all cases of appeals in equity as well as in admiralty, and to writs of error; and a failure to file such assignment is good ground for dismissing the appeal.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

In Equity. Bill by Carl Lang against the Louisiana Tanning Company and 12 individuals composing the board of directors thereof. A supplemental bill made P. Cougot and Wentzel Zimmerman parties defendant, and alleged that they, with J. M. M. Dufour, had been elected liquidators of the company, and prayed that they be removed, and that receivers be appointed to liquidate the company's affairs. A decree was accordingly entered removing such liquidators and appointing receivers as prayed. The liquidators appeal therefrom. Appeal dismissed.

J. R. Beckwith, for appellants.

John D. Rouse, Wm. Grant, and Frank E. Rainold, for appellee.

Before PARDEE and McCORMICK, Circuit Judges, and LOCKE, District Judge.

McCORMICK, Circuit Judge. On the 30th of April, 1892, the appellee, Carl Lang, a citizen of Indiana, on behalf of himself and of all others similarly situated, exhibited his bill of complaint in this case in the circuit court for the eastern district of Louisiana against the Louisiana Tanning Company and 12 individual defendants, alleged to then constitute the board of directors of said company, alleging that said company was incorporated for the declared purpose, as expressed in its charter, of purchasing unimproved real estate in the parish of Orleans, and such other vacant woodland as might be necessary for the purposes of the corporation, and of constructing, maintaining, and conducting a tannery for the tanning and manufacture of leather products, and such other articles of commerce as appertain thereto; that said company was duly organized; extensive and valuable works erected for the purpose of manufacturing leather and leather goods in the city of New Orleans; and in the fall of 1889 said corporation was in a situation to prosecute its legitimate business with great profit to the shareholders; that

the president and directors of said corporation, and other shareholders, whose names are unknown to complainant, are engaged in the butchering business in New Orleans, and have constantly on hand, as a product of said business, a large quantity of hides for sale; that they own a majority of the stock of the corporation, and since the adoption of an amendment of the charter, procured by the president and secretary of the company on the 21st of November, 1889, pursuant to a scheme to defraud the complainant, who is not in the butcher business in New Orleans, and others similarly situated, have confined the operations of said corporation to the selling of hides produced by and belonging to themselves, as a broker or commission merchant, charging for such services a mere nominal brokerage. The prayer of the original bill sought to restrain this course of trade, alleged to be unlawful as well as fraudulent, and to have the operations of the corporation restored to and confined to the purposes expressed in the original charter, and for all orders necessary to effect that object.

On the 11th of June, 1892, the complainant filed a supplemental bill against the original defendants, except Joseph Tujague, and against P. Cougot and Wentzel Zimmerman, who were not parties to the original bill, alleging that since the filing of the original bill the officers of said corporation had called a stockholders' meeting, and on the 1st day of June, by a vote of a sufficient number of shareholders, said corporation was dissolved, and put in liquidation, and that the defendants Pierre Cougot, J. M. M. Dufour, and Wentzel Zimmerman were elected liquidators, have qualified, and are now in possession of the books, records, and property of the company as such; that about the time of the filing of the original bill the officers and directors of said corporation made a note to Pierre Ader (at that time a director) in the sum of $3,000, payable on demand, and at the same time granted a mortgage to secure the same, bearing upon all the real property of said company; that Pierre Cougot acted as the agent of said Ader in said transaction, and has filed a suit to foreclose said mortgage, and procured the issuance of a writ of seizure and sale thereon under which the sheriff has seized said real estate, and has advertised the same to be sold on the 25th day of June, 1892, to satisfy said note; that all of said actions of the officers and directors of said company were parts of a scheme and combination between them to wreck and destroy said corporation, and appropriate its assets and property to their own use; that the officers and directors are liable to account for all the profits made by them, and all they ought to have made out of the business of the corporation while under their control. The prayer is that a receiver may be appointed; that an account be ordered taken of the amounts due by the several defendants on account of all the matters complained of in the original bill and in the supplemental bill; that the assets of said company may be brought in and distributed; that said liquidators be ordered to deliver to said receiver the books and assets of the company and enjoined from interfering with the receiver in the performance of his duties. After notice to the parties of a rule to

show cause why the receiver should not be appointed, and an appearance for them by counsel presenting affidavits and argument, the circuit court, on the 24th June, 1892, ordered, adjudged, and decreed as follows:

"That the interests of the defendants J. M. M. Dufour and P. Cougot in the subject-matter of the litigation in this case, and their relation to the Louisiana Tanning Company, which is adverse to the interests of the shareholders thereof, renders them incompetent to act as liquidators of said dissolved corporation, and their election and appointment, as such, is hereby set aside; and the said Wentzel Zimmerman, the other liquidator, having expressed a wish to be relieved of his trust, is also set aside.

"(2) It is further ordered that Wentzel Zimmerman, selected by the court in the first instance, and Geo. W. Barbot, nominated by the complainants, and the defendants declining to nominate third receiver, Joseph H. DeGrange, also selected by the court, be, and they are hereby, appointed receivers of said Louisiana Tanning Company, to act as trustees thereof in place of said liquidators, with full power and authority to liquidate and settle the affairs of said dissolved corporation; to collect, get in, and receive the outstanding debts, claims, and moneys due to or on account of said corporation business; to receive and take possession of all the stock in trade, effects, and property of every nature and kind belonging to said corporation; to redeem, under the orders of this court, any and all property of said corporation now under seizure or otherwise detained by legal process, if they deem it best and for the interest of creditors and shareholders, upon such terms as may be prescribed by the court; to take possession of all books of account, papers, records, or writings belonging to said dissolved corporation; to sue for and recover, for the use and benefit of the creditors and shareholders, any and all sums of money for which any person may be liable to said corporation on any account; to sue for any property to which said company may be entitled, either legally or equitably; to sell any of the property and assets of said dissolved corporation under orders of this court, and give title thereto; and, finally, to settle and liquidate the affairs of said corporation, and pay its lawful debts, and divide any surplus that may remain among the shareholders, all under the direction of this court. And said receivers are hereby vested with all the powers and authority usually granted to receivers, as well as with those belonging to liquidators of dissolved corporations, in whose place and stead they are appointed.

"(3) It is further ordered that the defendants, and each of them, deliver over to such receivers all stock in trade, property, effects, books, papers, writings, and records of every nature and kind soever, in their possession or under their control, belonging to said Louisiana Tanning Company; and also all moneys, notes, drafts, bills, and other evidences of indebtedness due to said dissolved corporation.

"(4) That said receivers do each, within two days, execute a bond with the clerk of this court, in the usual form, in the penal sum of ——— dollars, with sufficient security, to be approved by such clerk, for the faithful performance of their duties as such receivers.

"(5) It is further ordered that said receivers from time to time make report to the court of all their doings in this behalf, and that either party to this cause, or said receivers, shall be at liberty to apply to the court from time to time for such further orders as may be necessary."

Thereupon the appellants, as individuals and as liquidators, prayed an appeal, and have filed a transcript of the record in this court, and seek to have said order of the circuit court reviewed and reversed as a final decree.

The appellees move to dismiss this appeal on the following grounds:

"(1) Because the decree appealed from herein is not final, and the court is therefore without jurisdiction to entertain the appeal. (2) Because appellants

have not filed an assignment of errors, as required by rule No. 11 of this honorable court."

In the progress of an equity cause, orders and decrees may be made which so affect the parties or the property involved in the suit as to require that such order or decree, to be reviewed at all by an appellate court with effect, should be appealed promptly, and not await the full disposition of the whole suit; and whenever this is the case the decree is held to possess such an element of finality as to bring it within the terms of the statute limiting the right to appeal only from final decrees. Many illustrations of the application of this principle are to be found in the United States Supreme Court Reports, and many of the features or elements by which such appealable finality is to be distinguished are defined in the opinions of that court.

In Bostwick v. Brinkerhoff, the United States supreme court say:

"The rule is well settled and of long standing that a judgment or decree, to be final, within the meaning of that term as used in the acts of congress giving this court jurisdiction on appeals and writs of error, must terminate the litigation between the parties on the merits of the case; so that, if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered. It has not always been easy to decide when decrees in equity are final within this rule, and there may be some apparent conflict in the cases on that subject." 106 U. S. 3, 1 Sup. Ct. Rep. 15.

See Grant v. Insurance Co., 106 U. S. 429, 1 Sup. Ct. Rep. 414. In Forgay v. Conrad the supreme court, in an opinion by Chief Justice Taney, say:

"When the decree decides the right to the property in contest, and directs it to be delivered up by the defendant to the complainant, or directs it to be sold, or directs the defendant to pay a certain sum of money to the complainant, and the complainant is entitled to have such decree carried immediately into execution, the decree must be regarded as a final one to that extent, and authorizes an appeal. * * * This rule, of course, does not extend to cases where money is directed to be paid into court, or property to be delivered to a receiver, or property held in trust to be delivered to a new trustee appointed by the court, or to cases of like description." 6 How. 204.

The appellant's counsel cites on his brief to support this appeal: St. Louis, I. M. & S. R. Co. v. Southern Exp. Co., 108 U. S. 24, 2 Sup. Ct. Rep. 6; Iron Co. v. Meeker, 109 U. S. 180, 3 Sup. Ct. Rep. 111; Thomson v. Dear, 7 Wall. 342; Cosby v. Buchanan, 90 U. S. 490; Stovall v. Banks, 10 Wall. 583; Railroad Co. v. Bradleys, 7 Wall. 583; Elliott v. Sackett, 108 U. S. 132, 2 Sup. Ct. Rep. 375; Canal Co. v. Beers, 1 Black, 54. We do not deem it necessary or useful to review these numerous cases. The doctrine of all of them is in substantial accord with that of the cases above referred to in this opinion, and is to the effect that a decree is final for the purpose of an appeal when it terminates the litigation between the parties on the merits of the case, and leaves nothing to be done but to enforce by execution what has been determined. A correct analysis of the pleadings in this case, and of the decree from which this appeal is taken, shows that this case does not come within the rule or within its application as announced in those cases.

We are of opinion that the second ground on which the dismissal of this appeal is moved is also well taken. Appeals from the circuit courts shall be subject to the same rules, regulations, and restrictions as are or may be prescribed in law in cases of writs of error. Rev. St. § 1012. There shall be annexed to and returned with any writ of error for the removal of a cause, at the day and place therein mentioned, an authenticated transcript of the record, an assignment of errors, and a prayer for reversal, with a citation to the adverse party. Rev. St. § 997. Our rule 11, (47 Fed. Rep. vi.,) based on these provisions of the statute, requires the plaintiff in error or appellant to file with the clerk below, with his petition for writ of error or appeal, an assignment of errors, which shall set out separately and particularly each error asserted and intended to be urged. The first clause of subdivision 5 of rule 24 (Id. xi.) provides that when, according to this rule, a plaintiff in error or an appellant is in default, the case may be dismissed on motion. The counsel for the appellants insists that this rule can never have been intended to relate to any appeals except appeals from admiralty causes. There is, however, nothing in the language of the statutes or of our rules, or in the nature of the case, restricting the application of the rule to appeals in admiralty. The purpose of the rule is twofold: to advise the adversary as to what he is to defend, and to aid the appellate court in reviewing the case. It is so far not jurisdictional that the court may, in a proper case, entertain the appeal, and notice a plain error not assigned or specified; but we consider the better practice is to require a compliance with the rule in all cases of appeals in equity, as well as of writs of error in cases at law. We conclude, therefore, that the motion to dismiss this appeal is well taken, and should be granted, and it is so ordered.